UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA, * Criminal Action No. 05-120-"F"
*
Plaintiff, * New Orleans, Louisiana
*
v. * Thursday, November 6, 2006
*
TIMOTHY BOYD DIXON, * 10:45 a.m.
*
Defendant. *
* * * * * * * * * *

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE MARTIN L.C. FELDMAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: Assistant United States Attorney
BY: EMILY GREENFIELD and
MARK MILLER
500 Poydras Street, Second Floor
New Orleans, LA 70130
504-680-3000

For the Defendant: Assistant Federal Public Defender
BY: GEORGE CHANEY, JR.
500 Poydras Street, Room 318
New Orleans, LA 70130
504-589-7920

Reported by: David A. Zarek, CCR, RP
Hale Boggs Building
500 Poydras Street
Room 406
New Orleans, LA 70130
504-523-6062

Transcript recorded by mechanical stenography; transcript produced from dictation.

P R O C E E D I N G S

MORNING SESSION

(Wednesday, November 9, 2006)

THE COURT: Call the next case.

DEPUTY HILL: Criminal Action 05-120, United States of America versus Timothy Dixon.

MR. CHANEY: Good morning, Your Honor. George Chaney on behalf of Mr. Dixon, who is present in court.

THE COURT: Good morning.

MS. GREENFIELD: Emily Greenfield for the United States.

THE COURT: What about Mr. Miller?

MS. GREENFIELD: Mr. Miller, I apologize.

MR. MILLER: Good morning.

THE COURT: This is before the Court for sentencing, counsel. I know that there has been a memorandum by the defendant for a sentence below the guidelines and asking for a probated sentence. The Government has submitted a memorandum in opposition. I have read the memoranda. If there is anything that you want to add that is not in your memos, I will hear from you in just a few minutes.

There has been an objection to the presentence report regarding the enhancement for obstruction of justice. I don't believe I need any further argument on that. I presided at the trial. I heard all of the testimony as did

the jury. Mr. Dixon was convicted by the jury in part based upon his own testimony, which the jury wholly rejected. And it seems to the Court that reasonable jurors could have concluded that Mr. Dixon lied when he testified under oath. So the objection to the presentence report regarding the obstruction of justice enhancement is denied.

Now, is there anything else about the report that you would like to bring to my attention at this time, counsel?

MR. CHANEY: Not for the defense, Your Honor.

MS. GREENFIELD: None from the Government.

THE COURT: All right, let's take up the issue of the defendant's request for probated sentence. Mr. Chaney, I am familiar with your argument. But I would be glad to hear anything else that you want to add if you have anything else to add.

MR. CHANEY: Certainly, Your Honor. Your Honor, there is anticipated -- well, initially, Your Honor, the sentencing guidelines were meant to be mandatory. Last January the --

THE COURT: That is all in your brief and not something I don't know. Tell me something I don't know.

MR. CHANEY: Certainly, Your Honor. With respect to after Booker the Court deliberated or basically said the guidelines, one of the possible seven factors that the Court can consider in making determinations regarding an

appropriate sentence, and it referred to 18 U.S.C. 3553, which addressed specific instances, those things the Court can consider. What it starts with is the Court can consider the nature of the case and then specific facts about the defendant. And I think if the Court considers, for example, that the nature of the case, this is a case where there was no injury to anyone. I said that --

THE COURT: I don't agree with that. I don't agree with that. But go ahead. I'm sorry.

MR. CHANEY: No physical injury.

THE COURT: No physical injury.

MR. CHANEY: But certainly, and I say, I bring this up not to say that that some how diminishes the responsibility or anything like that but to give a context to it. It certainly is something that causes fear in somebody, and in that sense there was certainly possible or the likelihood of an emotional or even some type of psychiatric emotional injury or fear being produced in a person.

With respect to the defendant's specific things, what I would point to is that Mr. Dixon has a significant history of some mental and emotional problems which date back to as early as seven or eight years old. We provided the Court testimony, limited testimony regarding that. But it is something that is uncontested that these problems grew from some real problems that this young man had.

There were attempts to help him through significant hospitalization in his adolescence. And there are drug regimens and other things that were in place to try to help him to deal with issues like impulse control and that sort of stuff through the years. They all failed. Why? Why does that justify a probated sentence? Well, it justifies, well, I think some of them are aborted, Your Honor. I think some of the things that in effect helped him with those issues were aborted.

THE COURT: Aborted by his own family.

MR. CHANEY: Certainly. Aborted, I agree with the Court, and I submitted that.

THE COURT: If he is given a probated sentence, he is going to be in the same environment that he was before.

MR. CHANEY: But he will have the added, but he will have the added supervision that the U.S. Department of Probation provides. What he will have is the services that they can access which is outside the family which he will have as a compelled participation if the Court believes that's appropriate, or if mental health believes that's appropriate. And sometimes with issues relating to mental health and that people do not, do not want to comply, take medication and that sort of stuff, and oftentimes when they deviate from a treatment regimen, you see that they run afoul of the law. And so it is something that I think the

Court can consider and think it is something --

THE COURT: Well, I have considered it very seriously, because I took your memorandum very seriously.

MR. CHANEY: Okay.

THE COURT: I took this case very seriously.

MR. CHANEY: Absolutely. And as I do.

THE COURT: I know you did, and I have complimented you in private, and I want to compliment you in public for, I mean I think you are a credit to the profession and a credit to the constitution.

MR. CHANEY: Thank you, Your Honor. Thank you. And Your Honor, one of the things is not addressed in 3553 or Booker but has been a part of our existence since the beginning of time is the concept of mercy, and mercy is not a merited thing. It is not something that you earn. It does not come because you deserve it. Mercy is something that comes from the recognition of the humanity in all of us, the divinity in all of us. Mercy is something that says, you know what? In spite of your actions, in spite of what you have done, I am going to show mercy to you. And it is a part of a process that helped to heal. And Your Honor, this young man, I spoke with his mother, and if he wanted to address the Court, and she felt like she would break down. That was something, and she asked me to bring to the Court the concept of mercy. Mercy is something that

the Court can consider, and I think when added to the other thing, I think it is a basis for this Court to give a non-guideline sentence and even a probated sentence.

The factors that 3553 addresses can be served by a probated sentence. There is punishment, there is an opportunity to address some specific issues with respect to Mr. Dixon. There is an opportunity to ensure that he is not involved in new crimes. So the issues of the recidivism are addressed, and also just the idea that the public needs to be protected.

And Your Honor, I would point to the fact that Mr. Dixon has been out and under supervision for an extended period of time, and during this time frame he has not breached the law in any way. And that in effect shows that when he is under supervision -- he was under supervision of pretrial services for an extended period of time, and he operated well under that, Your Honor. So it in effect answers, I think, to some degree the question of whether this young man is amenable to probation. I think his behavior during this time frame that he has been out addresses that. Thank you, Your Honor.

THE COURT: Let me hear from the Government.

MS. GREENFIELD: Your Honor, the Government objects to any variance below the guideline range of 27 to 33 months. And it is based on as I know you have our memorandum which

mentions our position. But just to reiterate that, 18 U.S.C. 3553(a) reflecting the seriousness of his crime. As Your Honor has noted, there was an emotional injury to the community of Meraux. There was financial injury. All of the personnel down there had to come and answer to this hoax. It was a serious crime. We live in the post-911 world where the threat of terrorist attacks on the community in our country is very real. And this was a very frightening experience and serious thing to do.

I think that throughout the trial the defendant's anti-social, anti-government sentiment has come out. There has been no apology for that, and the sentence reflects that the punishment that the guideline range, which has been properly calculated, reflects the consequences and seriousness of this and the punishment that he needs to be held responsible and answer for what he did.

Also, deterrence. A probated sentence, a probationary period, would not provide any type of incentive or deterrence. It, in fact, would embolden Mr. Dixon in his, we believe anti-government and anti-social sentiment situation. Others like him, well, no big deal, we will get off, we will be able to still be out in the community and enjoy our freedom. And we want to definitely protect the public from other crimes.

In terms of any emotional problems that the defendant

has, we believe the Bureau of Prisons has definitely programs. There is mental health. He would be removed from the family that might otherwise take him off or hurt any emotional and mental improvement that he can make. So we would respectfully request that Your Honor adhere to the guidelines and not go below those.

THE COURT: Thank you. Mr. Dixon, before sentence is imposed, do you have anything to say in mitigation of this instance?

MR. CHANEY: No, Your Honor.

MR. DIXON: No.

THE COURT: Do you have anything to add, Mr. Chaney?

MR. CHANEY: Nothing, Your Honor.

THE COURT: Well, as you all know, this has been a very serious case. It has been a case that has captured the Court's attention. And given the circumstances of the case, I have given this very, very careful consideration. As I indicated, the objection regarding enhancing for obstruction of justice was denied, because in my view having heard the same testimony that the jurors heard, reasonable jurors could have concluded that Mr. Dixon lied under oath when he testified here at this trial.

I agree with Mr. Chaney. He had a very difficult background and upbringing. He was in foster care for two years. He had an eccentric upbringing at best, and he now

seems to be attracted to Nazi paraphernalia slogans as more than in my observation at least just a innocent collector of World War II items about Nazism and Fascism.

He has had a severe behavioral problem for reasons that need not be stated in open court to spare him and his family any embarrassment, but he has had severe behavioral problems. And he has other issues or disorder issues that perhaps have affected his personality. Those are things that the Court has taken into consideration.

But the Court has also taken into consideration other things. He has threatened his family in the past. Because of his serious behavioral issues and because of what seems to be a morbid attraction to a period of world history that is at best disgusting, Nazism, it is this Court's view that Mr. Dixon needs a more structured environment than has been urged upon the Court by Mr. Chaney.

I have considered other sentencing factors as Mr. Chaney has urged the Court to do. The Court finds that the guidelines have been correctly calculated. And when asked to offer mercy, which I am not convinced I am wise enough to do, let me simply say that it seems that mercy has already, leniency has already been offered, given the fact that Mr. Dixon could face as much as five years in prison under the statute that he stands convicted of.

The Court has also considered the sentencing factors

under Section 3553(a). Let me summarize those. As counsel for the government has said, one of the policy factors that must be considered by the Court is a sentence that reflects the seriousness of the offense to promote respect for the law and to provide just punishment for the offense.

The Post Office in Meraux was closed because of Mr. Dixon's conduct. The public and employees were scared and frightened because of Mr. Dixon's conduct. Mr. Dixon's conduct at best shows a serious disregard and disrespect for the law.

Another fact the Court is asked to consider under the terms of the statute is to provide adequate deterrence to criminal conduct. We live in fearful times. One does not have to do anything but exercise common sense to understand that a threat of an attack at a time when this country faces the phenomenon of international terrorism is certainly conduct that must be and that this Court will insist for this community be deterred.

Thirdly, the Court is instructed to protect the public from further crimes of this defendant. And what concerns this Court is that this defendant has done similar stuff before. The testimony of former teachers and counselors is clear. Yes, he may have done it when he was more youthful and even more stupid than he is now. But the fact is he did it. And I could not tell you that he will not do it

again as long as this Court has supervision over his conduct.

Finally, the Court is instructed by the statute and by law to provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the most effective manner. And I agree with the government: The defendant needs a structured environment. The defendant needs to be away from the environment that he has been in. Regretfully that environment is going to be a prison environment.

The defendant's motion for non-guideline sentence is denied. The Court orders that a copy of its statement of reasons for imposing sentence together with a copy of the defendant's presentence investigation report be filed of record under seal.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant, Timothy Blake Dixon, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 30 months, as to Count One. Upon release from prison, the defendant shall be placed on supervised release for a term of three years, as to Count One.

Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the Probation office in the district to which he has been

released. And while on supervised release, the defendant shall comply with the mandatory and standard conditions that have been adopted by this Court, and he shall not possess a firearm.

In addition, the following special conditions are imposed -- and by the way, I want the defendant, if possible, sent to an institution that has adequate mental health and counseling in the prison program.

In addition, the following special conditions are imposed: The orientation and life skills condition. And of course, after release from prison while on supervised release, the mental health treatment condition. But I want him to have mental health treatment while he is in prison. And if it is necessary to file any additional papers, Mr. Chaney, do so.

MR. CHANEY: Thank you, Your Honor.

THE COURT: The defendant shall cooperate in the collection of a DNA sample as required by law. He does not have the ability to pay a fine, and the Court will waive the fine in this case but orders that the defendant must pay a special assessment in the amount of $100, which is due at once.

Now, there is an issue in the Court's mind, and apparently not in anyone else's mind, but I want to raise and that is the issue of self-surrender. I am concerned

that in the past there have been threats against the defendant's family. And I don't know whether anybody has any comment about self surrender, but I would like if you do I would like to have them now, because even though self surrender has been recommended, I am quite frankly a little uncomfortable about it.

MS. GREENFIELD: The Government would recommend and ask for remand.

MR. CHANEY: Your Honor, I would ask the Court to allow Mr. Dixon to self surrender. I think those things that the Court is worried about would permit him to have and be a benefit to him in terms of BOP of how they rate him or how they basically deal with him within their system. I think with respect to Mr. Dixon, he has appeared for court at every scheduled court appearance. He has been completely compliant with the terms up to and through this date, Your Honor. And I expect that he understands the impact of his failure to adhere to the date and time and place that he is ordered to surrender. I think, Your Honor, that he will comply with this Court's order, and I ask the Court to allow him to surrender himself after the BOP has made a designation. Your Honor, post-Katrina the time that is involved often times in getting people to facilities has been extended. There was a time when people were designated in as little as two weeks. That time frame

has extended. Our experience has been it has been increased as much as six weeks or more, Your Honor, before people are designated. And they sit in facilities in and around the State of Louisiana until they are designated by BOP as to where they are supposed to go. I think it is an unneeded expense to the Government, and also the Government would have to pay to get him to where he is going. He will undertake that cost. He will also save the Government the cost of his incarceration.

THE COURT: I am worried about the fact that he threatened family members.

MR. CHANEY: Your Honor, with respect to that, what I would say is the family members that if they were threatened, those were individuals who were living in or around the Meraux community. Mr. Dixon and his mother have lived in Holden, Louisiana, for at least the last 16 or 18 months, Your Honor. He has little to no contact. There has been no evidence during the pendency of these proceedings to reach out or to in any way harass or in any way bother those family members, Your Honor.

THE COURT: Now he faces a jail sentence.

MR. CHANEY: I understand that, Your Honor. But Mr. Dixon has comported himself in a way with respect to complying with pretrial services. He has completely been compliant, Your Honor. And I think it is something that if

they say that past behavior can be a predictor of future, there has been not --

THE COURT: That's what I am worried about.

MR. CHANEY: There has been no attacks. I think the concern that the Court has expressed is the possibility of a physical attack. There has been, he has no history of attacking or physically confronting or assaulting or batteries on any person in his life. That is not in his history. And so I think that is something that the Court can consider. And if the Court is inclined, Your Honor, once they make sure that he is restricted with respect to things, there is the added possibility that he be put on some type of confinement up until the time he is to surrender. That is an expense that he would undertake. Again it would restrict him to the residence, at home, and it will provide the Court, I think, an added measure.

THE COURT: Let me hear from probation about that. Is that possible?

PROBATION OFFICER HARBISON: Given the defendant is on pretrial supervision now, home confinement could be added as a condition. He is not on home confinement now, but they have that as --

THE COURT: How meaningful would home confinement be? I mean, you know, I am under home confinement, but I still go out for whiskey and a cigar. How meaningful is home

confinement?

PROBATION OFFICER HARBISON: He would wear a leg brace, and he would be required to get --

THE COURT: He would?

PROBATION OFFICER HARBISON: -- telephone --

THE COURT: He would have to wear an ankle brace?

PROBATION OFFICER HARBISON: Or electronic monitoring.

THE COURT: This would be electronic monitoring?

PROBATION OFFICER HARBISON: Home confinement includes presumably electronic monitoring. That could be standard as a specific part of his home confinement.

THE COURT: Would the Government have any problem with that?

MS. GREENFIELD: No, Your Honor.

THE COURT: All right, I am going to order that he self-surrender on/or before noon, January 10, 2007. But I want this defendant to be subject to home confinement and electronic monitoring until he actually reports to prison.

MS. GREENFIELD: Do we need another order for that or anything?

DEPUTY HILL: Magistrate Moore you all need to go see.

MR. MILLER: Can you order that Magistrate Moore at 2 o'clock have him added to the docket?

THE COURT: So ordered.

MR. MILLER: Conditional.

THE COURT: Do you understand what I want?

MR. CHANEY: Certainly. Thank you.

THE COURT: I don't want him just out. I am worried about some of this prior stuff that has been submitted to me in camera.

MR. MILLER: We are off to Magistrate Moore's chambers.

THE COURT: Anything else?

MR. CHANEY: Nothing, Your Honor, thank you, Your Honor.

THE COURT: Thank you, counsel, and thank you, Mr. Chaney.

(Sentencing concluded at 11:30 a.m., and then all counsel and the reporter and the Court returned to the courtroom at 2:30 p.m. for continued colloquy on the record.)

DEPUTY HILL: Be seated, please.

THE COURT: I have discovered that the Court's hopes that the defendant could be placed on home monitoring was based upon faulty and incomplete information. He can't have monitoring unless there is a land line. That is just not, just a telephone, a land line. And apparently there is no land line in his town. There are two types of monitoring. He could be locked down for 24 hours, or he could he allowed to go to work, which was not brought to my

attention. So let me ask again, remand or out on bond?

MR. CHANEY: With respect to the --

THE COURT: You each have five minutes. I am sick and tired of acting on incomplete and inaccurate information.

MR. CHANEY: Yes, Your Honor. My understanding is that there is a land phone line. There was not an active phone set up. I talked to Ms. Michele about making sure that there is a phone there. The phone is basically how the home monitoring works.

THE COURT: Why was I told then that there were all sorts of issues about who is going to pay for the phone and who was and is there a phone there or should there be? I need to find out why was that explained to me just five minutes ago?

MR. CHANEY: Ms. Michele is, the property assigned by her sister, and she spoke with her sister, and her sister had said they had a phone. She is going to address that issue. And I think the mix of information was just about whether or not there was maybe the financial ability to do it. And I think her sister has basically said she would make the, she would have a phone in that apartment either this evening or tomorrow, Your Honor. And as soon as she gets it, that will allow them to do the monitoring. The issue of --

THE COURT: Is he employed?

MR. CHANEY: He is working at Wal-Mart.

THE COURT: How long has he worked at Wal-Mart?

MR. DIXON: Since January.

THE COURT: Since January?

MR. DIXON: Yes.

THE COURT: All right, you can sit down.

MR. CHANEY: Thank you, Your Honor.

MS. GREENFIELD: Your Honor, the Government obviously we have requested remand earlier. The issue of home confinement, trying to do monitoring are those, and we were not aware of the different levels. Otherwise, that would be contrary to the Court's wishes. Pretrial is here.

THE COURT: That's how I found out about the different levels, which I was not advised of before. Go ahead.

MS. GREENFIELD: Right. And specifically handling those types of services, the potential question with regard to whether or not it can be installed, a phone, I don't know how long it is going to take for a phone to be installed at their place, making sure there is a land line. I don't know if that is actually a positive, and we know that. And it is up to Your Honor with regard if you are going to do home confinement whether it is 24-hour lockdown or --

THE COURT: Well, he is working. I am not going to make him miss work. But I mean how can I act without

facts? Mr. Chaney just told me that the phone is being there either this evening or tomorrow.

MS. GREENFIELD: And if Your Honor would permit --

THE COURT: I am permitting somebody to give me some accurate information for once this day.

PRETRIAL SERVICES OFFICER BRANT: Judge, Jason Brant from Pretrial Services. Installation of the phone service, based on Mr. Chaney saying the lines are within the house but the service has not been active. So at this point we are at the mercy of the phone company.

THE COURT: You are not at the mercy of the phone company. You are the United States Government. If you want to get the phone company out there, you get the phone company out there. And don't give me any bureaucratic baloney.

MR. CHANEY: As soon as the phone line is active, we can at that point install electronic monitoring.

THE COURT: You get the phone line active.

MR. CHANEY: Yes, sir. I guess the only question left would be -- I think you have answered that, is to allow him to work, which we can accommodate as well once we get the equipment installed.

THE COURT: All right, Mr. Dixon is remanded to custody. It is the Court order whether this has to be done by Judge Moore or whatever, that is up to you all, because

I am sick of this little circus. I want him on electronic monitoring. I want him to be permitted to go to his job, and I want the Government of the United States to get the telephone in there so that a monitor can be put on him. Is that clear?

MR. CHANEY: Yes.

MS. GREENFIELD: Yes, Your Honor.

THE COURT: Is there any question about what you are supposed to do now before Judge Moore?

MR. CHANEY: No, sir.

MS. GREENFIELD: No, sir.

THE COURT: He is remanded, but I want this monitoring business accomplished immediately so that he does not have to stay in custody contrary to this Court's intentions, which are electronic monitoring, and he can go to his job.

MR. CHANEY: Yes, sir.

MS. GREENFIELD: Thank you, Your Honor.

DEPUTY HILL: Court is adjourned.

(Sentencing concludes at 2:40 p.m.)

REPORTER'S CERTIFICATE

The undersigned certifies, in his capacity of Official Court Reporter, United States District Court, Eastern District of Louisiana, the foregoing to be a true and accurate transcription of his Stenograph notes taken Thursday, November 6, 2006.

New Orleans, Louisiana, this 23rd day of January, 2007.

DAVID A. ZAREK
Official Court Reporter